**ZEICHNER ELLMAN & KRAUSE LLP**
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400
Facsimile: (212) 753-0396
Nathan Schwed
Jantra Van Roy
Robert Guttmann

*Attorneys for Citibank, N.A.*

IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>HYPNOTIC TAXI LLC, *et al.*,<br><br>                    Debtors.<br>--------------------------------------------------------------<br>CITIBANK, N.A.,<br><br>                    Plaintiff,<br><br>                - against -<br><br>EAST 65TH STREET OWNERS LLC, EAST 66TH STREET UNIT OWNERS LLC, HALSEY LANE OWNERS, LLC, AMETHYST REALTY LLC, HELIUM REALTY LLC, GRAPHITE REALTY LLC, PRINCE HARRY REALTY LLC, SULFUR REALTY LLC, TURQUOISE REALTY LLC; TIGER EYE REALTY LLC, ZINC REALTY, LLC, ALEXANDRITE REALTY CORP., ALMAZ REALTY CORP., BLOODSTONE REALTY CORP., BULL CONSULTING INC., CORAL REALTY CORP., DENGA REALTY CORP., DYLAN REALTY CORP., GRANAT REALTY CORP., IZUMRUD REALTY CORP., QUARTZ REALTY CORP., ZHEMCHUG REALTY CORP., ZOLOTO REALTY CORP.,<br><br>                  Defendants. | Chapter 11<br><br>Case No. 15-43300 (CEC)<br><br>(Jointly Administered)<br><br><br><br><br>Adv. No.<br><br>**COMPLAINT** |

Plaintiffs Citibank, N.A. ("Citibank" or "Plaintiff"), by and through its undersigned counsel, as and for its complaint against defendants East 65th Street Owners, LLC, East 66th Street Owners LLC, Halsey Lane Owners LLC, Amethyst Realty LLC, Helium Realty LLC, Graphite Realty LLC, Prince Harry Realty LLC, Sulfur Realty LLC, Turquoise Realty LLC, Tiger Eye Realty LLC, Zinc Realty LLC, Alexandrite Realty Corp., Almaz Realty Corp., Bloodstone Realty Corp. Bull Consulting Inc., Coral Realty Corp., Denga Realty Corp., Dylan Realty Corp., Granat Realty Corp., Izumrud Realty Corp., Quartz Realty Corp., Zhemchug Realty Corp., and Zoloto Realty Corp. (collectively, the "Defendants"), alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334(b) and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This is a non-core matter related to the captioned bankruptcy cases.

2. Venue of this action is proper in this District pursuant to 28 U.S.C. § 1409(a).

## PARTIES

3. Citibank is a national banking association organized and existing under the laws of the United States with an office at Two Court Square, Long Island City, New York 11120.

4. Defendant East 65TH Street Owners LLC is a New York Limited Liability Company which owns real property located at 136 East 65 Street, New York, New York (the "65th Street Residence").

5. Defendant East 66TH Street Unit Owners LLC is a New York Limited Liability Company which owns real property located at 200 East 66 Street, Unit A1101, New York, New York (the "66th Street Residence").

6. Defendant Halsey Lane Owners LLC is a New York Limited Liability Company which owns real property located at 108 Halsey Lane, Bridgehampton, New York (the "Halsey Lane Residence" and, together with the 65th Street Residence and the 66th Street Residence, the "Residential Properties").

7. Defendant Amethyst Realty LLC is a New York limited liability company which owns real property located at 1607 Mermaid Avenue, Brooklyn, New York (the "Amethyst Property").

8. Defendant Helium Realty LLC is a New York limited liability company which owns real property located at 2869 West 17 Street, Brooklyn, New York (the "Helium Property").

9. Defendant Graphite Realty LLC is a New York limited liability company which owns real property located at 328-330 Butler Street, Brooklyn, New York (the "Graphite Property").

10. Defendant Prince Harry Realty LLC is a New York limited liability company which owns real property located at 1608 Mermaid Avenue, Brooklyn, New York (the "Prince Harry Property").

11. Defendant Sulfur Realty LLC is a New York limited liability company which owns real property located at 1603-05 Mermaid Avenue, Brooklyn, New York (the "Sulfur Property").

12. Defendant Turquoise Realty LLC is a New York limited liability company which owns real property located at 1702 Mermaid Avenue, Brooklyn, New York (the "Turquoise Property").

13. Defendant Tiger Eye Realty LLC is a New York limited liability company which owns real property located at 1610 Mermaid Avenue, Brooklyn, New York (the "Tiger Eye Property").

14. Defendant Zinc Realty LLC is a New York limited liability company which owns real property located at 71-08 Northern Blvd., Jackson Heights, New York (the "Zinc Property").

15. Defendant Alexandrite Realty Corp. is a New York corporation which owns real property located at 1415 Neptune Avenue, Brooklyn, New York (the "Alexandrite Property").

16. Defendant Almaz Realty Corp. is a New York corporation which owns real property located at 1411 Neptune Avenue, Brooklyn, New York (the "Almaz Property").

17. Defendant Bloodstone Realty Corp. is a New York corporation which owns real property located at 2803 Mermaid Avenue, Brooklyn, New York ("Bloodstone Property").

18. Defendant Bull Consulting Inc. is a New York corporation which owns real property located at 48-02 Van Dam Street, Long Island City, New York (the "Bull Property");

19. Defendant Coral Realty Corp. is a New York corporation which owns real property located at 2423 Mermaid Avenue, Brooklyn, New York (the "Coral Property").

20. Defendant Denga Realty Corp. is a New York corporation which owns real property located at 44-07 Vernon Blvd., Long Island City, New York (the "Denga Property").

21. Defendant Dylan Realty Corp. is a New York corporation which owns real property located at 1614 Mermaid Avenue, Brooklyn, New York (the "Dylan Property").

22. Defendant Granat Realty Corp. is a New York corporation which owns real property located at 1526 Mermaid Avenue, Brooklyn, New York (the "Granat Property").

23. Defendant Izumrud Realty Corp. is a New York corporation which owns real property located at 2804/2806 Mermaid Avenue, Brooklyn, New York (the "Izumrud Property").

24. Defendant Quartz Realty Corp. is a New York corporation which owns real property located at 1518-20 Mermaid Avenue, Brooklyn, New York (the "Quartz Property").

25. Defendant Zhemchug Realty Corp. is a New York corporation which owns real property located at 1413 Neptune Avenue, Brooklyn, New York (the "Zhemchug Property").

26. Defendant Zoloto Realty Corp. is a New York corporation which owns real property located at 1528 Mermaid Avenue, Brooklyn, New York (the "Zoloto Property" and, together with the Amethyst Property, the Helium Property, the Graphite Property, the Prince Harry Property, the Sulfur Property, the Turquoise Property, the Tiger Property, the Zinc Property, the Alexandrite Property, the Almaz Property, the Bloodstone Property, the Bull Property, the Coral Property, the Denga Property, the Dylan Property, the Granat Property, the Izumrud Property, the Quartz Property, and the Zhemchug Property, the "Investment Properties").

## NATURE OF ACTION

27. By this Complaint, Plaintiff seeks a judgment declaring that, pursuant to this Court's November 17, 2015 Order of Attachment, the United States Marshal ("Marshal") properly levied attachment on Evgeny Freidman's ("Freidman") 100% ownership interests in (i) the Residential Properties because (a) the transfers to the Defendants who currently hold title to those properties were fraudulent as to Freidman's creditors (including Citibank) and, pursuant to Debtor & Creditor Law Section 278, Citibank could disregard those transfers and levy against the Residential Properties as if they were still owned by the New York self-settled trusts that previously held title to them, and (b) at all relevant times, each owner of the Residential Properties was an alter ego of Freidman, and (ii) the Investment Properties, because, at all relevant times, each owner of the Investment Properties was an alter ego of Freidman.

## BACKGROUND

**The Citibank Loans and Lawsuits**

28. Beginning in or around 2012, Citibank made a series of secured loans to entities involved in the New York City taxi medallion business. Those loans totaled approximately $31.5 million (the "Citibank Loans"), and were personally guaranteed by Freidman.

29. Each of the Citibank Loans had a payment due December 1, 2014, which was not made, and on December 4, 2014 Citibank declared a default and accelerated the Citibank Loans. Thereafter, the Citibank Loans matured and/or were accelerated, and were not paid, triggering additional defaults. The failure to pay the matured/accelerated Citibank Loans constituted additional defaults under Freidman's guaranties.

30. On March 5, 2015, Citibank filed a summons and complaint in Supreme Court, New York County (Index No. 650691/2015) (the "State Court Action"), asserting twelve causes of action against Freidman and various other defendants. Citibank sought (among other things) a judgment against Freidman as guarantor of the Citibank Loans for an amount in excess of $31.5 million (the "Citibank Claims").

31. In the State Court Action, on May 19, 2015, Justice Jeffrey K. Oing granted Citibank's motion for an order of seizure ("Seizure Order"), allowing Citibank to seize the certain collateral related to Freidman's taxi medallion business. The Seizure Order was entered on June 12, 2015. The same day, a separate order was entered in the State Court Action denying Defendant's application for a stay of the Seizure Order.

32. On June 15, 2015, the Appellate Division, First Department entered an order granting a temporary stay of the Seizure Order pending a hearing by a full panel. On July 14,

2015, the Appellate Division granted a stay of the Seizure Order on condition that Defendants post a $50 million bond.

33. No bond was posted, and on July 22, 2015, twenty-two medallion loan borrowers filed the captioned Chapter 11 bankruptcy cases. The commencement of these bankruptcies automatically stayed enforcement of the Seizure Order.

34. On July 29, 2015, the Debtors removed the State Court Action to the United States District Court for the Southern District of New York, and after transfer to the United States District Court for the Eastern District of New York, the action was referred to this Court by order dated October 28, 2015.

**Freidman's Residential Properties**

35. Prior to June 15, 2008, in anticipation of his acquisition of the 66th Street Residence, Freidman arranged for the creation of a trust, 200 East Residence Trust. On June 15, 2008, 200 East Residence Trust acquired title to the 66th Street Residence. Thereafter, Freidman arranged for the transfer of title in the 66th Street Residence from 200 East Residence Trust to 200 East 66th Street Irrevocable Residence Trust (the "66th Street Trust").

36. On or about August 1, 2003, Freidman acquired the 65th Street Residence.

37. In connection with closing on Freidman's acquisition of the 65th Street Residence, on or about August 1, 2003, Consumers Federal Credit Union ("CFCU") extended a mortgage loan to Freidman in the amount of $3,600,000. In connection therewith, Freidman granted CFCU a first mortgage against the 65th Street Residence (the "65th Street Mortgage").

38. Thereafter, on or about March 7, 2011, Freidman transferred title in the 65th Street Residence to 136 East 65th Street Irrevocable Residence Trust (the "65th Street Trust").

39. On or about December 28, 2012, Freidman acquired the Halsey Lane Residence.

40. In connection with the closing on Freidman's acquisition of the Halsey Lane Residence, CFCU extended a mortgage loan to Freidman in the amount of $2,850,000. In connection therewith, Freidman granted CFCU a first mortgage against the Halsey Lane Residence (the "Halsey Lane Mortgage").

41. Thereafter, on or about February 28, 2013, Freidman executed a deed transferring title in the Halsey Lane Residence to 108 Halsey Street Irrevocable Residence Trust (the "Halsey Lane Trust").

**Freidman Consults with Counsel to Transfer Assets Beyond Reach of Creditors**

42. Shortly after Citibank commenced the State Court Action, Freidman sought the advice of a trust and estates lawyer, Michael Zimmerman ("Zimmerman"), to whom he had been referred by his long-time lawyer in other matters, Ellen Walker. Freidman acknowledged under oath that he was motivated to consult Zimmerman for "trust and estate and tax purposes . . . and for liability purposes." Zimmerman similarly testified that Freidman came to him for estate planning and "asset protection."

43. On or about March 31, 2015, less than 30 days after Citibank commenced the State Court Action, Freidman caused to be organized: (i) Defendant East 66TH Street Unit Owners LLC; (ii) Defendant East 65th Street Owners LLC, and (iii) Defendant Halsey Lane Owners LLC (collectively, the "Residential LLCs").

44. Freidman owned 100% of the membership interests in each of the Residential LLCs at the time they were organized.

45. On or about April 17, 2015, at Freidman's direction, (i) the trustees of the 66th Street Trust transferred the 66th Street Residence to Defendant East 66TH Street Unit Owners LLC, a limited liability company established on or about April 1, 2015, and organized under New York

8

law, and (ii) the trustees of the 65th Street Trust transferred the 65th Street Residence to Defendant East 65TH Street Owners LLC, a limited liability company established on or about April 1, 2015, and organized under New York law.

46. On or about May 27, 2015, the trustees of the Halsey Lane Trust transferred the Halsey Lane Residence to Defendant Halsey Lane Owners LLC, a limited liability company organized under New York law, (collectively, the "Residential Property Transfers").

47. Freidman orchestrated the Residential Property Transfers for the sole purpose and with the specific intent of placing the Residential Properties beyond the reach of his creditors, as part of a plan devised for Freidman by Zimmerman.

48. In furtherance of that plan, Zimmerman arranged for the creation of four separate foreign trusts, the Kelly Funding Trust and the Birkin Funding Trust, both located in the Cook Islands, the Evelyn Funding Trust, located in Belize, and the Lindy Funding Trust, located in Nevis (the "Kelly Trust," the "Birkin Trust," the "Evelyn Trust," and the "Lindy Trust," and collectively the "Trusts").

49. Each of the Trusts is governed by substantially similar organizational documents.

50. On or about June 15, 2015, Freidman transferred into the Trusts (the "Ownership Interest Transfers") the entirety of his interests in (i) the Residential LLCs, and (ii) the LLCs and corporations (collectively, the "Investment Entities") owning the Investment Properties.

51. Upon information and belief, the total value of Freidman's interests in the Residential Properties and the Investment Properties (collectively, the "Real Estate") at the time of the Ownership Interest Transfers exceeded $60 million.

**This Court's Decision and Findings**

52. Following transfer of the State Court Action to this Court, Citibank sought a pre-judgment attachment of Friedman's assets.

53. On November 5, 2015, Citibank moved by order to show cause for a temporary restraining order and an order of attachment, seeking to restrain any transfer of assets in which Freidman has an interest and to restrain any further transfer of the assets transferred by Freidman to the Trusts. The Court issued a temporary restraining order (the "TRO") that day, pursuant to CPLR § 6210, restraining any transfers of Freidman's property or property of the Trusts not in the ordinary course of business.

54. On November 17, 2015, the Court entered an Order of Attachment and an amended temporary restraining order. The Order of Attachment provides, in pertinent part:

> [IT IS] ORDERED, that the Sheriff shall levy within his or her jurisdiction at any time before final judgment upon any property in which Freidman has an interest and upon any debts owing to Freidman, and shall take into his/her actual custody all such property capable of delivery and shall collect and receive all such debts, including, but not limited to, the assets of Kelly Funding Trust, Birkin Funding Trust, Lindy Funding Trust, and Evelyn Funding Trust, and assets maintained at any financial institution, including any securities, asset management or other similar types of accounts, up to and including the sum of $40 million.

55. On November 19, 2015, the Court stayed the Order of Attachment pending an evidentiary hearing on Citibank's motion, which was held on November 30, 2015.

56. On January 12, 2016, the Court issued its Decision After Trial, which, among other things, lifted the stay of the Order of Attachment. The Decision After Trial is incorporated and restated herein in its entirety by this reference.

57. Among other things, the Court found that (i) Freidman had transferred his interests in the Residential LLCs and the Investment Entities (collectively, the "Real Estate Entities") for the purpose of putting those interests, and the underlying Real Estate, beyond the reach of his creditors, and (ii) Freidman made those transfers with actual intent to defraud his creditors and/or to frustrate enforcement of Citibank's potential judgment.

58. The Court stated, among other things, that "Freidman maintains management control over and use of the Investment Properties . . . Freidman testified at trial that he never transferred to the Trustees signing authority over the bank accounts into which the income from the Investment Properties is deposited . . . Freidman continues to exercise that authority."

59. The Court further stated: "[c]onfronted with the fact that he seems to have maintained total control over the Investment Properties, Freidman testified that he is 'in the process' of handing over control . . . ."

60. In November 2015, Freidman testified that (i) he and his family and friends were residing at the Residential Properties, (ii) there were no written lease agreements between Freidman and the Residential LLCs authorizing such use of the Residential Properties, (iii) Freidman paid all expenses associated with the Residential Properties, including mortgages, real estate taxes, utilities, etc., and (iv) the Residential LLCs did not receive any money from Freidman in exchange for his use and occupancy of the Residential Properties.

61. Freidman also testified in November 2015 that (i) his various businesses used and occupied many of the Investment Properties, (ii) there were no written lease agreements between Freidman and the Investment Entities authorizing such use and occupancy of the Investment Properties, (iii) Freidman's businesses paid all expenses associated with the Investment Properties, including mortgages, real estate taxes, utilities, etc., (iv) the funds used to pay such expenses came

from any of Freidman's business bank accounts and (iv) the Investment Entities did not receive any money from Freidman or his businesses in exchange for his businesses' use and occupancy of the Investment Properties.

62. In July 2016 Freidman testified that he continued to pay all expenses associated with the Real Estate out of his businesses' bank accounts (whichever had available funds).

63. In April, May, November and January 2016, the United States Marshal levied upon each of the Residential Properties and Investment Properties (collectively, the "Properties") by recording Notices of Attachment (that had been delivered to him by Citibank) against the section, block and lot of each of the Properties in the appropriate Offices of the County Clerk in New York, Kings, Queens and Suffolk Counties.

64. In May 2017, the Court conducted an evidentiary hearing on, *inter alia*, the Trusts' motion for summary judgment on their petition to vacate the Attachment Order, and Citibank's motion for, *inter alia*, a declaration that the Trusts were Freidman's alter egos. On October 4, 2017, the Court issued Proposed Findings of Fact and Conclusions of Law (the "F&C"). The F&C is incorporated and restated herein in its entirety by this reference. On November 20, 2017, the District Court issued a decision adopting the F&C. The District Court's decision is incorporated and restated herein in its entirety by this reference.

65. In the F&C, the Court found that Freidman controls the Trusts by controlling the Real Estate Entities, which are the Trusts' primary, if not only, assets.

## FIRST CLAIM FOR RELIEF

### (Declaration – Citibank Properly Attached the Residential Properties – DCL 278)

66. Plaintiff repeats and realleges each of the allegations contained in paragraph 1 through 65 above as if fully set forth at length.

67. Pursuant to CPLR 6202, Citibank may attach any property that it can apply, under CPLR 5201, to its anticipated judgment against Freidman.

68. Pursuant to CPLR 6211 and the Attachment Order issued thereunder, Citibank was authorized to attach any property in which Freidman has an interest, even if title thereto was held in the name of a third-party.

69. Prior to the Residential Property Transfers, if Citibank would have had judgment against Freidman, it could have pierced the New York Trusts and levied execution on the Residential Properties.

70. Prior to the Residential Property Transfers, if Citibank would have had an order of attachment against Freidman, it could have pierced the New York Trusts and attached the Residential Properties.

71. Freidman arranged the Residential Property Transfers (pursuant to which the New York Trusts transferred title in the Residential Properties to the Residential LLCs), for the purpose of placing the Residential Properties beyond the reach of his creditors, such as Citibank.

72. The Residential Property Transfers were fraudulent as to Freidman's creditors, including Citibank.

73. Pursuant to Debtor & Creditor Law Section 278(1)(b), Citibank was permitted to disregard the Residential Property Transfers and attach the Residential Properties as if they were still titled in the New York Trusts.

74. By virtue of the foregoing, Citibank is entitled to judgment declaring that the Marshal properly levied on the Residential Properties as property belonging to Freidman and that his levies were effective.

## SECOND CLAIM FOR RELIEF

### (Declaration – Citibank Properly Attached the Residential Properties – Alter Ego)

75. Plaintiff repeats and realleges each of the allegations contained in paragraph 1 through 74 above as if fully set forth at length.

76. At all relevant times, Freidman completely dominated and controlled each of the Residential LLCs, in disregard of the supposedly separate identity of each of the Residential LLCs.

77. Freidman organized the Residential LLCs for the sole and/or principal purpose of defrauding Citibank and his other creditors, by creating a vehicle to allow him to transfer his Residential Properties beyond the reach of Citibank and his other creditors.

78. Freidman's domination and control of each of the Residential LLCs enabled Freidman to arrange the fraudulent transfers of the Residential Properties with the goal of placing them beyond the reach of his creditors.

79. Freidman's scheme (including the Residential Property Transfers and the Ownership Interest Transfers) was wrongful and has caused harm to Citibank and his other creditors in that he attempted to make himself "judgment proof" shortly after Citibank commenced a lawsuit against him on his obligations under his Guaranties.

80. At all relevant times, the Residential LLCs failed to observe basic corporate formalities, including failing to maintain corporate or financial records.

81. At all relevant times, the Residential LLCs did not have or maintain adequate independent capital, but rather relied on Freidman and his other entities to pay their expenses and obligations and were treated as mere "pass through" entities.

82. At all relevant times, there was no separate or "independent" management of the Residential LLCs; Freidman was the sole owner, manager and decision maker of the Residential LLCs.

83. At all relevant times, the Residential LLCs lacked any individuality distinct from that of Freidman.

84. At all relevant times, the Residential LLCs were not intended to be independent profit centers.

85. At all relevant times, the Residential LLCs did not have their own employees; instead, there affairs were handled by employees of Freidman's other entities.

86. At all relevant times, the Residential LLCs did not have their own office space, addresses or telephone numbers; instead, they shared officers, employees, office space, addresses and telephone numbers with the other Defendants, other Freidman entities, Freidman and/or his parents.

87. At all relevant times, the Residential LLCs did not deal with Freidman at arms' length and did not have, exercise or display discretion separate from that of Freidman.

88. At all relevant times, Freidman has used the Residential Properties as his personal assets.

89. At all relevant times, the Residential LLCs have been so dominated by Freidman and their separate identities have been so disregarded, that they primarily transacted Freidman's business rather than their own, requiring them to be treated as Freidman's alter egos.

90. Freidman's use of the Residential LLCs as "shells" to enable him to enjoy the full use and benefit of the Residential Properties as if they were his own while shielding, and

preventing his personal judgment creditors from levying upon, the Residential Properties is wrongfully injurious to his creditors and renders the Residential LLCs his alter egos.

91. By virtue of the foregoing, Citibank is entitled to judgment declaring that the Marshal properly levied on the Residential Properties as property belonging to Freidman and that his levies were effective.

## THIRD CLAIM FOR RELIEF

### (Declaration – Citibank Properly Attached the Investment Properties – Alter Ego)

92. Plaintiff repeats and realleges each of the allegations contained in paragraph 1 through 91 above as if fully set forth at length.

93. At all relevant times, Freidman completely dominated and controlled each of the Investment Entities, in disregard of the supposedly separate identity of each of the Investment Entities.

94. At all relevant times, the Investment Entities failed to maintain corporate formalities, such as failing to hold meetings for directors, shareholders or members, failing to maintain corporate, transactional and financial records, failing to issue stock and membership certificates, failing to elect directors, failure to have meetings of directors, etc.

95. At all relevant times, the Investment Entities did not have or maintain adequate independent capital but rather relied on Freidman and his other entities to pay their expenses and obligations and were treated as mere "pass through" entities between them and Freidman.

96. At all relevant times, there was no separate or "independent" management of the Investment Entities; all significant managerial and financial decisions regarding the Investment Entities' affairs were made solely by Freidman and primarily for Freidman's personal benefit.

97. At all relevant times, the Investment Entities were not intended to be independent profit centers.

98. At all relevant times, the Investment Entities did not have their own employees; instead, their affairs were handled by employees of Freidman's other entities.

99. At all relevant times, the Investment Entities did not have their own office space, addresses or telephone numbers; instead, they shared office space, addresses and telephone numbers belonging to the other Defendants, other Freidman entities, Freidman and/or his parents.

100. At all relevant times, the Investment Entities did not deal with Freidman at arms' length and did not have, exercise or display discretion separate from that of Freidman.

101. At all relevant times, Freidman consistently took and retained for his personal benefit rent paid by tenants to the Investment Entities.

102. Freidman's domination and control of each of the Investment Entities enabled Freidman to place his real estate assets beyond the reach of his creditors.

103. This scheme has caused Citibank harm in that Freidman has attempted to make himself "judgment proof" while at the same time guaranteeing debts owed to Citibank.

104. At all relevant times, Freidman used and commingled monies of, and generated by, the Investment Entities among each other, among other entities owned by Freidman, and with Freidman's other personal assets.

105. At all relevant times, Freidman has used, and continues to use, the assets of each of the Investment Entities as if the assets were and are his personal assets.

106. Freidman's use of the Residential LLCs as "shells" to enable him to enjoy the full use and benefit of the Investment Properties as if they were his own while shielding, and preventing

his personal judgment creditors from levying upon, the Investment Properties is wrongfully injurious to his creditors and renders the Investment Properties his alter egos.

107. By virtue of the foregoing, Citibank is entitled to judgment declaring that the Marshal properly levied on the Investment Properties as property belonging to Freidman and that his levies were effective.

WHEREFORE, Citibank respectfully requests that judgment be entered as follows:

(i) On the First Claim for Relief, against the Residential LLCs, declaring that the Residential Transfers were fraudulent conveyances and, therefore, the Marshal properly levied on the Residential Properties as property belonging to Freidman and those levies were effective;

(ii) On the Second Claim for Relief, against the Residential LLCs, declaring that at the time the Marshall levied on the Residential Properties the Residential LLCs were Freidman's alter egos and, therefore, the Marshal properly levied on the Residential Properties as property belonging to Freidman and those levies were effective;

(iii) On the Third Claim for Relief, against the Investment Entities, declaring that at the time the Marshall levied on the Investment Properties the Investment Entities were Freidman's alter egos and, therefore, the Marshal properly levied on the Investment Properties as property belonging to Freidman and those levies were effective; and

(iv) Granting such other further and different relief as is just and proper.

Dated: New York, New York
July 3, 2018            ZEICHNER ELLMAN & KRAUSE LLP

By: /s/ Nathan Schwed_____
Nathan Schwed
Jantra Van Roy
Robert Guttmann
New York, New York 10036
Telephone: (212) 223-0400
Facsimile: (212) 753-0396
*Attorneys for Citibank, N.A.*

870341v6